## St. Louis, I. M. & S. Railway Co. v. Freeman.

| | |
|---|---|
| 36 | 41 |
| 55 | 468 |
| 36 | 41 |
| 61 | 621 |
| 62 | 167 |
| 36 | 41 |
| f69 | 383 |
| 36 | 41 |
| 74 | 411 |
| 36 | 41 |
| 82 | 444 |
| 35 | 41 |
| f90 | 284 |

1. RAILWAYS: *Ordinary care.*

Railways are bound to use ordinary prudence, foresight and caution to avoid injury to persons or property on or near their tracks; and ordinary care varies with the circumstances and the subject-matter endangered, and is such care as persons of ordinary prudence would use in similar circumstances.

2. ———: *Contributory negligence.*

A railway company, or other person, is not liable for negligence where the plaintiff by his own negligence has contributed to the injury, unless the injury was willful or resulted from a want of ordinary care on the part of the defendant to avert it, after the discovery of the negligence of the plaintiff; and this without regard to the *degrees* of negligence on each side.

3. SAME: *Same.*

If a parent permit a young child without sufficient discretion to get out of the way of a running train, to go alone upon a railway track, this is *prima facie* evidence of negligence, and he can not recover against the company for the death of the child from the running of the train, unless the trainmen, after discovering the child, omitted to use reasonable precaution to avoid the collision.

4. SAME: *Same.*

The fact that a child under the age of discretion is upon a railroad track, where trains are frequently passing, without a proper attendant, is only *prima facie* evidence of negligence in a parent, and is subject to explanation; and it is for the jury to determine from the evidence, whether the explanation is sufficient to repel the presumption of negligence.

5. SAME: *Same.*

For parents living near a railroad where trains are frequently passing, to leave a child at their house, too young for discretion, and without an attendant of sufficient discretion, and without any precaution to prevent its escape from the house, is gross negligence; and if the child gets upon the track and is killed, the company is not responsible to the parent, unless the trainmen, after discovering the child, omit the use of reasonable precaution to avoid the injury.

6. DAMAGES: *Prospective—Future services of child.*

A parent may recover of a railroad company damages for the loss of future services of a child negligently killed by its train.

7. SAME: *Contributory negligence of parent after the injury.*

Where injuries received by a child from a running train would not prove fatal but for the want of reasonable care of the parent after the injury, he can not aggravate his damages against the company beyond damages for the wounding, etc.

8. SAME: *Measure of.*

The measure of damages to a parent for killing his child is the pecuniary value of his services during minority, and the cost and expense incurred by the parent on account of the injury, less the reasonable and necessary expense of raising it: the value to be such as is ordinary with children in like condition and station in life, without regard to the relationship between them, or to the parent's feelings or the child's sufferings.

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*J. M. Moore,* for appellant:

Plaintiff should have used *ordinary* care. *Shearman & Red. on Negligence,* secs. 29, 30, 32, 33; 72 *Penn. St.,* 169; 24 *Ohio St.,* 670; 49 *Ind.,* 104. It is *per se* negligence to leave a child unprotected in danger from the railroad. 4 *Allen,* 283; 57 *Penn. St.,* 172; 21 *Wend.,* 615.

Doctrine of contributory negligence does not depend on comparison. 21 *Iowa,* 15; 32 *ib.,* 467; 23 *Conn.,* 437; 33

*N. J. Law*, 434; 49 *Penn. St.*, 186; 22 *Wis.*, 245; 5 *Hill* (*N. Y.*), 282; 24 *N. Y.*, 430. Where it ceases to operate. *Shear. & Red. on Neg.*, sec. 36. Also, *sec.* 30, and cases cited. 26 *Ark.*, 6.

Hypothetical instructions most proper. 104 *Mass.*, 455; 12 *Pick.*, 176, and cases cited.

Road not bound to have anticipated a child being on the track. *Sher. & Red. on Neg.*, secs. 481–2.

Defendant was entitled to an unbiased jury. 24 *Ark.*, 346; 19 *Ark.*, 163; *ib.*, 534.

*Z. P. Farr*, *Thomas Fletcher* and *Robert A. Howard*, for appellee:

The amendment made by plaintiff below, was not necessary (*Gantt's Digest*, sec. 4611); but, if so, court could allow it. *Ib.*, 4611, 4616. Rights of plaintiffs not affected. *Ib.*, 4619; *Nash's Pl. and Pr.*, 328; *Newman's do.*, 706–17–18; 31 *Ark.*, 162; 30 *Ark.*, 312.

Objections to charges not specific. 32 *Ark.*, 224.

On amount of care required of appellant. *Memphis & L. R. R. R. Co. v. Barker* (*MS.*); *Wharton on Neg.*, 309, 314; *Cooley on Torts*, 680.

EAKIN, J. The facts in this case are peculiar. An empty train of the appellant, railway company, consisting of the engine, tender and several cars, was running on irregular time, moderately, on a down grade, keeping a lookout for a regular train to avoid collision. Some four or five employees of the road were along. About one hundred yards in front of the engine an object was observed to crawl up on the track, from the weeds and cross-ties on one side. It resembled a hog so that they were all completely deceived. The alarm-whistle, usual in such cases, was given,

and the brakes were applied, so as to retard, but not stop, the motion of the train. After proceeding about two-thirds of the intervening way, they, much to their consternation, discovered that it was a child. Immediately, the engine was reversed, the whistle sounded, the brakes continued, and every effort was faithfully made to stop the train, but without success. It passed over the child and stopped about the engine's length ahead. Death ensued. The parents of the child lived in an uninclosed house about one hundred feet from the track. Neither was at home. The father had left first that morning, leaving at home the mother, a child about eighteen months old, and two other children from three to seven years of age. The mother left afterwards to visit a neighbor, leaving the children alone.

The father, appellee, sued the road, under the act of February 3, 1875. (*1 Pamph. Acts, c. 75, p. 133.*) The first section of the act provides that "all railroads which are now, or may be hereafter, built and operated, in whole or in part, in this state, shall be responsible for all damages to persons and property done or caused by the running of trains in this state." The third section provides when the person killed or wounded is a minor, the father, if living, "may sue for and recover such damages as the court or jury trying the case may assess."

Negligence was averred, and denied, and contributory negligence charged by defendant.

Upon the trial, after part of the testimony had been heard, plaintiff, against objections, was allowed to amend his complaint, by charging that, because of the injury, he was deprived of the services of the child, and would be until she would have become of age.

Plaintiff recovered a verdict for $1,100, from which, after

the overruling of a motion for a new trial, defendant appealed.

Such grounds of the motion as are considered material, will be stated and determined in the opinion, which will be confined to errors urged in argument.

### OPINION.

Railways, as well as all other modes of public conveyance, are attended with danger to persons and property. Their advantages in the progress of civilization, to general convenience and the development of economical resources, are universally conceded to overbalance the dangers incident to a proper and careful use of their franchises. They have been encouraged by all civilized nations, and except in rare cases and under statutes, have not been held insurers of the lives or property of others exposed to danger by their vicinity or operations.

Upon the other hand, they are not allowed to trifle with, or disregard, these rights of the citizens. The harmonious adjustment results in this, that railways are bound to use ordinary prudence, foresight and caution to avoid injuries to persons or property on, or near, their tracks. The difficulty is not in the law, but in its application to the special facts, in which juries are entitled to the assistance of the courts.

<div style="float:right">1. RAILWAYS: Must avoid injuries.</div>

It is matter of law that this "ordinary care" imposed upon railways, to be exercised by their employees, varies with the circumstances and the subject-matter endangered. For example, ordinary care would require more precaution in running through streets of a village, or populous neighborhood, at night, than through vast outlying forests or prairies in daylight; and it is the instinct of humanity, as well as a rule of law, that everywhere ordinary care requires more precautions against endangering the lives of

<div style="float:right">Ordinary care varies with circumstances, etc.</div>

persons than of cattle. Still it is ordinary care in each case, which means such care as persons of ordinary prudence would use in similar circumstances. This would be naturally greater, where vast interests are involved, than in case of smaller ones, and since no interests can be weighed against human life, it would, with all good men, be greatest to avoid the death of a human being. (See cases cited in *Shearman & Redfield's Work on Negligence, sec. 24 and notes.*

2. Contributory negligence. Further, it is a plain principle of law that no railway company, nor other person, can be held liable for negligence, where the plaintiff, by his own negligence, has contributed to the injury, unless it was a willful injury, or one resulting from the want of ordinary care on the part of defendant to avert it, after the negligence of the plaintiff had been discovered. The weight of reason and authority makes this qualification independent of the *degrees* of negligence on each side. Although that of the defendant may have been, at first, the greater, the plaintiff can not recover if any ordinary negligence on his part contributed to the injury, unless, as before stated, the defendant, becoming aware of plaintiff's negligence, and the impending danger, had then and thereafter failed to use such care as the circumstances required to avert the calamity, and which, in the case of human life, would be the greatest care.

If the jury were made plainly to understand these principles, the facts were properly committed to them for their application ; and there is, therefore, no reason to disturb their verdict as to the main issue, for the want or conflict of evidence. The circumstances under which the child was left, the conduct of the parents, the speed of the train, the watchfulness of the employees, the measures taken to avert danger when they thought it was a hog, and those taken after they discovered the shocking mistake, were all

St. L., I. M. & S. Railway Co. v. Freeman.

matters upon which, from their general knowledge of human affairs, they might determine whether any negligence was imputable to the company, either as originally committed, or after they had seen the consequences of the negligence of others in permitting the child to be upon the track, if any had been committed, of which last element, also, they were the judges. The amount recovered, depending upon the true measure of damages, is a matter for separate consideration.

This leads us to the examination of the instructions, to see whether or not the principles, above indicated, were plainly presented to them for their action. They were substantially, and in effect, as follows:

For the plaintiff, the court, in the first place, instructed, generally, that defendants were liable if, from want of ordinary care on the part of the employees, the train ran over the child and killed it, unless it were found, also, that plaintiff was precluded from recovery by his own contributory negligence; and that the measure of damages was a just pecuniary compensation for loss of the services of the child.

2. That, in determining the care and watchfulness required of those having the custody of the child, the jury might consider their condition and situation in life.

3. That, although the child might have been improperly on the track, the defendants were still bound to exercise ordinary care and diligence to avert running over it.

4. That, if the employees, by the exercise of ordinary skill and caution, *might* have observed the child on the track, and recognized it as such in time to stop the train, the defendants were liable, unless the plaintiff was found precluded by contributory negligence.

Defendant asked nine instructions, which were all re-

fused, but which were, three of them, modified by the court. The first was general, and as modified and given, embraced the same points, substantially, as the first given for plaintiff, save as to the measure of damages, which was omitted.

2. If the employees were exercising due care in looking out for obstacles, saw the child and mistook it for another object, then used such care as would have been reasonable and prudent if it had been the object supposed, and then, discovering it to be a child, used every possible precaution to avoid injuring it, there was no negligence. This instruction was only modified so as to express that the mistake must have been made in the exercise of reasonable care and diligence under the circumstances.

3. If the child was under the age of discretion, and was on the railroad, where trains were frequently passing, without a proper attendant, this was negligence on the part of plaintiff, which would preclude his recovery.

This instruction was properly refused. It made the facts *conclusive* of negligence. They were only *prima facie*, and subject to explanation. It was for the jury to determine from all the facts whether such explanation of the unfortunate exposure appeared, as would repel the presumption of negligence on the part of the parents.

4. The substance of this instruction was, that if a parent permits a young child to place itself in the way of danger, he shall be taken to have assumed that the child would exercise due diligence to avoid it; and therefore, if the jury should find that the child was permitted to go on the railroad alone, and that a person of ordinary discretion would in that position have gotten out of the way of the train, and the child did not, they should find for defendant, unless the train men, after knowledge that a child was on

the track, omitted reasonable precaution to avoid the collision.

In an action by a parent, this instruction was strictly correct, and there was evidence to which it might apply. The *fact* that the child was on the track was sufficient *prima facie* to *raise the presumption* that it was there by permission. The authorities collected and cited upon this point, in the note to *section 48 of Shear. & Red. on Negligence*, quoted above, seem conclusive, and the principle is consonant with reason.

The onus was thrown on the plaintiff to overcome this presumption. Whether he had done so was a matter which should have been left to the jury. The instruction should have been given as asked.

5. The court was asked by this instruction to direct the jury that if they found that the parents lived near by the railroad, where trains frequently passed; that the child was too young for discretion; that the parents left it without an attendant of sufficient discretion, and without any precaution to prevent its escape from the house, and the child crawled on the track and was killed, they should find for defendant, unless they further found that the employees on the train omitted to take reasonable precaution to avoid the accident after they discovered the position of the child, and that it was a child. This, too, was substantially correct, and should have been given. The facts stated would have in themselves amounted to gross negligence.

6. This was, on the point of contributory negligence, where the injury is found to have been caused by negligence on both sides. It asked the court to instruct the jury, if they so found negligence on both sides, the defendants were not liable, unless its servants, after they discovered the object to be a child, could, by reasonable care,

NEGLI-GENCE:

On both sides:

4—36

St. L., I. M. & S. Railway Co. v. Freeman.

have avoided it, although their failure to discover the "*child's position*" was the result of carelessness and inattention. By "child's position" was evidently meant, that it was a child on the track, and not a hog.

The doctrine of contributory negligence has no place where there is not negligence on both sides. It is invoked to neutralize a right on plaintiff's part, which would otherwise exist, and from its nature it makes a good defense against actual negligence of defendant. Its scope does not extend, however, to allow defendant to inflict a wanton or careless injury. It would be extending it too much, we think, to make it a defense to a general and reckless disregard of human life, by running cars without any care as to whom or what they might hurt. A gross and general carelessness, being proved in the running of the cars, or evidence tending to that, might have made it proper to refuse that instruction. But there was nothing of the sort to which the instruction could apply. All that the jury might have possibly presumed would be, that in the special case, and with regard to the special injury, they might earlier, by close attention, have seen that it was a child before they did. Against such special negligence, the doctrine of contributory negligence may be fairly used as a defense, unless, after the consequences of the plaintiff's negligence had been discovered, and when the injury might still have been avoided, they failed to use ordinary care appropriate to the subject-matter, being greatest, of course, where human life is endangered. The sixth instruction seems framed to apply these principles to the facts of the case as developed by the evidence, leaving the conclusion to the jury in accordance with their findings. It should have been given.

7. This instruction declared it negligence in the parents

St. L., I. M. & S. Railway Co. v. Freeman.

to leave the child in charge of a child six or seven years of age, near a railroad where trains were frequently passing. This was not matter of law. The jury should have been left to judge from the evidence, whether, according to their judgment of the usual capacity of such children, the precautions taken to guard the child were reasonably sufficient to relieve the parents of negligence.

The instruction was properly refused.

8. This was to the effect that the plaintiff could not recover prospective damages for loss of future services of the child. This was properly refused.

*6. Damages, Prospective: Future services of child.*

9. This instruction was to the effect, that if the jury found that the plaintiff and those in charge of the child were careless, and failed to follow the directions of the physician in attendance, and thus contributed to its death, plaintiff could not recover.

*7. ——: Contributory negligence after injury.*

The instruction was too broad. The statute (sec. 3) gives the right of action to the father in case of either the killing or wounding of a minor. This accrued at the time of the accident, if at all, at least to the extent of the wounding. Some damage might be recovered for that if death had not ensued. The jury may judge, from the nature of the injury, that damage, to some extent, would necessarily attend it. The complaint sets forth the facts of the running over, bruising and wounding, as well as the death. It would seem, indeed, upon general principles, that if the jury should believe that the injuries might not have resulted in death but for want of reasonable care on the part of the plaintiff, he ought not thus to be allowed to aggravate his damages by conduct after the injury, but it is not necessary now to construe the statute in that regard. The instruction was properly refused.

10. This regards damages. It proposes to instruct the jury that the measure is the pecuniary value of the child's

*8. Measure of Damages.*

services during minority less the reasonable and necessary expense of raising it during minority, and the costs and expenses incurred by the parent on account of the injury; the value of services to be such as are ordinary with children in the same condition and station in life, without regard to any peculiar value the plaintiff might attach to the child's services by reason of the relations existing between them, and without regard to the parents' feelings or the child's sufferings. The court refusing this as asked, modified it by directing the jury that they could not regard the peculiar value which might attach to the services by reason of the relation "except so far as they may find such *relation* to enhance the pecuniary value of the services."

This modification seems to have been based upon the testimony of the father, who, against the objection of the defendant, was allowed to testify as to the value of the child's services *to him*. In response to a question of defendant, as follows: " Would the child's services be worth eighteen dollars per month at the age of seven years?" he answered: "I would not begin to take it for my child— just its presence would be worth that. It would be worth more than any other person's child would. I could put more confidence in it." And further on he said: "I can't say why it would be worth more than other children. I can trust a child that I raised myself more than I could any other." By the modification, the jury were advised that they, on account of this confidence, might attach a higher pecuniary value to the child's services if rendered to the father, than would be reasonable if rendered to any one else. We think the honorable circuit judge was in this mistaken. The courts, in the construction of like statutes, have firmly and positively renounced all sentiment. They have dealt with them as involving cold, pecuniary

considerations alone, without any regard to the sympathy which the judges might feel individually in the distress and bereavement of the parent. In an action by a master for loss of services of a servant, I have never heard that he could recover damages for loss of services enhanced above their ordinary market value in like cases, by the ease of mind which the master might feel from such confidence and trust. There would be no limit to damages under such a rule. A merchant might be willing to pay thousands of dollars rather than part with a clerk or confidential agent, upon whose fidelity he might rely, because of ties of gratitude or love; but it has never been considered that such a clerk could recover, in a suit for services, more than they would be worth to others in like cases, on account of his capacity and character. Under such a ruling, the boundary-line between strict pecuniary damages and those for solace would soon disappear.

The court erred upon this point both in admitting the evidence and modifying the instructions. It was good as asked.

Pausing here to review the instructions as asked on both sides, we see no substantial errors materially affecting defendant's rights in giving those asked by the plaintiff; in modifying the first and second, and in refusing the third, seventh, eighth and ninth of those asked by defendant. But we think defendant's case might have been prejudiced by the refusal to give the fourth, fifth, sixth and tenth of his instructions as asked, and by the modifications of the last.

Whether these errors were cured by the voluntary instructions afterwards given by the court, next requires consideration. They were long, and only their legal effect will be here set forth.

The court stated the general principle that railroads were responsible for the want of ordinary care and diligence of its employees in running the trains, except " in cases where the plaintiff is precluded from recovery by what the law calls contributory negligence." That to make the defense the negligence of the plaintiff must be ordinary and contribute to the injury, and the defendant must not have failed, after becoming aware of the danger, to use a degree of care proper to avert the injury. That the wife of the plaintiff was his agent, and her negligence would be imputable to him. The court then proceeded correctly but abstractly to define the different degrees of negligence as "slight," " ordinary " and " gross," and instructed the jury that in determining what facts made a specific degree in each particular case, they must carefully consider the thing to be taken care of, and the danger to be avoided, and " since, from the nature of their business, human life is always more or less endangered by the running of heavy trains over their road, the companies should take such precautions as the magnitude of the perils demands. It was left to the jury to say whether the employees of defendant were, under these rules, exercising ordinary care. If they were, the verdict should be for defendant. If not, and the jury should find that the injury resulted from their failure, they were advised that defendant would be liable for damages, and they should find accordingly, unless they should further find that the plaintiff, or his agents, failed in the exercise of ordinary care and prudence in the management of the child, and that such negligence contributed to produce the injury which resulted in death; in which case the plaintiff could not recover, unless they still further found that after discovering the danger, the defendant failed to exercise a proper degree of care and diligence to avoid the

injury. In case of a verdict, they were instructed to assess damages in accordance with the special instructions given on that point.

It is very obvious that these additional instructions do not cure the error as to the measure of damages. They had been instructed specially that they might estimate any *peculiar* pecuniary value of the child's services attaching to the father by virtue of the relation.

For the rest they well define the law as far as they go, but they are not specially and hypothetically applied to the evidence in such a way as to enable a jury of practical men unused to legal reasoning clearly to understand their bearing. Besides, a review of the errors pointed out will show that they do not meet the particular points to which the defendants desired the minds of the jury to be directed in the instructions refused. Jurors are always men taken mostly from active avocations, and unused to apply general reasoning to the determination of details. We think the court erred in declaring the law as to damages and refusing the fourth, fifth and sixth instructions asked by defendant, and that the errors were not cured by the general instruction given on its own motion.

Reverse the judgment, and remand, etc.