### RAILWAY COMPANY *v*. DAVIS.

Decided February 20, 1892.

*Father's damages for death of son—Services after majority.*

> In estimating the "pecuniary injuries" of a father as next of kin, resulting from the death of a minor son eighteen years old, caused by another's negligence, under section 5226 Mansf. Dig., the jury are not bound to confine their consideration to the son's minority but may take into account the father's expectation of pecuniary benefit from the continuance of the son's life after his majority, where he had manifested an intent to aid his father after that time.

APPEAL from *White* Circuit Court.

MATTHEW T. SANDERS, Judge.

John M. Davis, as administrator of the estate of Clarence Davis, sued the St. Louis, Iron Mountain & Southern Railway Company for damages because of the injury and death of Clarence, through the carelessness and negligence of the said company.

The substance of the complaint was, that the deceased
was a minor, under the age of 18 years; and the defendant,
against the will and without the consent of plaintiff, em-
ployed him to undertake the dangerous and hazardous ser-
vices of a brakeman on its railway. That deceased was
young, awkward, clumsy and inexperienced, unacquainted
with the duties, dangers and hazards incident to such service,
and that defendant carelessly and negligently failed and
neglected to advise, instruct or inform him of his duties and
of the dangers and hazards incident to said service, or the
way or manner in which to perform said duties or guard
against and avoid the dangers and hazards incident there-
to. That defendant ordered Clarence to go between certain
moving cars and uncouple them, and that while the said
Clarence was attempting to obey this order, his foot was
caught and hung between the guard rail and main rail of
the track and he was run over and injured, from which in-
juries he died. That the service over and about the said
guard rail was attended with danger, and Clarence was,
through the negligence and carelessness of defendant, ex-
posed to this danger without proper instruction, caution,
warning and advice how to guard against said dangers or
how to perform such service.

The complaint set out two causes of action. The first
claiming damages to the estate of the said Clarence in the
sum of $5000. The second claiming damages to the next
of kin in the sum of $10,000.

Defendant denied negligence, and pleaded contributory
negligence on the part of deceased.

The evidence tended to show that deceased was killed in
the manner alleged in the complaint. He was never cau-
tioned as to the danger attending the use of guard rails.

Plaintiff testified : I am the administrator of the estate of
Clarence Davis, and was his father. He was 18 years old
on September 20, 1887, and was injured on the 22d day of
October, 1887, by defendant's cars at Knobel station, and
died on the 8th day of November following. Clarence was

raised on my farm, aud left home between the middle and last of June previous to his death and went into the employ of the defendant. He was an over-grown, awkward, gawky boy; he was not active, but moved and handled himself in an awkward and clumsy manner. It was noticed generally by those who saw him that he was very clumsy and awkward. He had no experience whatever in railroading. I saw him soon after he was hurt. He was in the railroad hospital at St. Louis. I was with him till he died, except a few hours. His right foot was split open from his toe to his heel, extending up to the ankle joint. His ankle was bruised and his leg lacerated to his hip. It looked as if the car wheel had run lengthwise of his leg, and mashed all the flesh on one side of the iron rail and the bone on the other side. His right arm was broken; his left hand and arm were mashed and injured, also his hip and back, and his body was bruised almost all over. It is impossible to describe the extent of his suffering. It was the most excruciating pain possible. He groaned almost every breath until he died. The physicians gave him opiates, but it was impossible to quiet him. Clarence was of a kind and affectionate disposition, and seemed to want to help me in every way he could. He bought me a fine sow and pigs and sent them to me, and paid a small account of mine at the store amounting to $5 or $6. He did this without my knowledge. He frequently sent presents to me and the rest of the family. His wages at this time were small, but he saved up enough to help me in this way. I think it was his desire to help me that caused him to go to railroading. The farm was poor; and when I talked with him and tried to persuade him to leave the railroad work, he said he could help me better in some other way than by staying at work on the farm; that it was too poor to make much on.

The jury found for the plaintiff, awarding $5000 damages to the estate of deceased and $1500 damages to his next of kin.

Defendant has appealed.

*Dodge & Johnson* for appellant.

1.   To bring this case within the exception to the general rule, it must appear that deceased, by reason of his youth and inexperience, did not know or appreciate the danger incident to service about unblocked rails, and that the company exposed him to the danger without warning him of it. 53 Ark., 123.   The jury must find both of these propositions sustained by the evidence before they can render a verdict for plaintiff.   The evidence does not sustain either. The books are full of cases where boys younger than deceased were held to a knowledge of the danger.   88 Pa. St., · 35 ; 39 Ark., 38 ; 71 Mo., 164.   The evidence in this case establishes three facts fatal to a recovery.   (1) The minor was not of tender age, small stature, or stupid appearance. (2) That the danger was one with which he had long been brought in contact.   (3) That it was of such plain character that to *look at it* was to understand the exact kind of danger to be guarded against.   15 A. & E. R. Cases, 491 ; 113 N. Y., 540; 34 N. W. Rep., 113 ; 21 N. E. Rep., 370; 113 Mass., 396; 142 *id.*, 522 ; 144 *id.*, 601; 146 *id.*, 182; 16 Atl. Rep., 737 ; 73 Ia., 306; 151 Mass., 152 ; 148 *id.*, 228; 151 *id.*, 86; 57 Mich., 182 ; 51 N. J. L., 507.   When the only danger is an *obvious one*, even a minor of average intelligence and ample opportunity to observe and take notice of it will be held to a knowledge of it.

2.   The verdict was excessive.

*Sanders & Watkins* for appellee.

1.   The law of this case was settled in 53 Ark., 118.

2.   The evidence supports the verdict.   The evidence was clear that deceased had never been warned of the danger.   2 Thomps. on Negl., p. 978 ; 74 Mo., 13.   The burden was on appellant to establish knowledge of the dangers of service, and that deceased knew how to perform his duties so as to avoid the hazards.   8 A. & E. R. Cas., 529.   76 Texas, 350, is a case strikingly in point as to the law of this case.

3. On the measure of damages, see 35 La. An., 708 ; 41 *id.*, 964 ; 7 So. Rep., 729.

COCKRILL, C. J. It was settled in the former appeal in this case that it was a question of fact for the jury, and not of law for the court, to determine whether the deceased, who was a country-reared lad of narrow experience, knew that service about an unblocked guard-rail was attended with danger. *Davis* v. *Railway*, 53 Ark., 128–9. The testimony was not materially varied on the second trial, and the question remained one of fact, and was therefore properly submitted to the jury.

The only objection urged to the charge of the court, outside of that which goes to the measure of damages, is that it was abstract in that the jury were told that it was the defendant's duty to warn an inexperienced servant of the hazards and risks of his employment, without limiting the direction to the hazard or risk about the unguarded rail, which was the sole cause of the injury. But there is no pretense that warning was given to the deceased about any other danger, and other parts of the charge given at the instance of the railway pointedly limit the jury's consideration to the hazard of the unblocked rail. We are unable to see, therefore, that the jury could have been misled by the charge. They have found in effect that the railway put an inexperienced lad in a place of danger without apprising him of the risk, and that, by reason of his inexperience, he was ignorant of the danger and was therefore killed. The proof justified the finding ; the court committed no error in submitting the question to the jury, and the company is liable.

It is claimed that the verdict is excessive. For the pain and suffering of the deceased and the damage to his estate recovered by the administrator for the estate a verdict of $5000 may be considered ample on the facts of this case, but it should not be disturbed by this court.

The damages recovered for the benefit of the father as next of kin are intended as compensation for a pecuniary

loss and can be measured with a nearer degree of accuracy. The amount recovered on that score was $1500. If the recovery could be for no more than the services of the son until the date of his majority, the sum is excessive, because the proof does not show that his services would have been worth that much in the limited time between the injury and the date of his majority.

The question whether the recovery for the benefit of the father as next of kin can go beyond the minority of the deceased son is therefore presented. It is a question upon which the authorities divide. There are many cases on both sides of the controversy in which the question has been passed upon without discussion, and but few shed light on the reason for adopting either rule. The leading cases which deny the right to recover for any expectation of benefit beyond minority are *State* v. *Ry.*, 24 Md., 84, and *A. & M. Association* v. *State*, 71 *id.*, 86. The argument of those cases is about this: As a minor has no legal right to his own services or earnings, even though he is working for himself with his father's consent; when he aids his father, whether by his personal services or by contributions from his earnings, he is only rendering to him what is already his, and the act, however often repeated, affords a vague conjecture but no legal evidence of what he will do after majority, when he has the absolute right to serve whom he pleases without the fear of parental interference.

When confined to the case of a child of such tender years as to be unable to maintain itself beyond the parental roof, the argument is doubtless sound. It seems to have received the sanction to that extent of this court in two cases which arose under the act of 1875, which, so far as the award of damages in a case like this goes, the court assimilated in those cases to acts like Lord Campbell's. But in each of those cases the child killed was an infant of such tender years that it was incapable of rendering any service or of affording evidence of an intent to render pecuniary aid after majority to its parents. The cases are not authority there-

fore upon the question in hand. *Little Rock, etc., R. Co.* v. *Barker*, 33 Ark., 350; *St. Louis, etc., R. Co.* v. *Freeman*, 36 *id.*, 41.

Some of the courts sustain the right to recover beyond minority, even in such cases. 2 Sedgwick, Dam., sec. 576; *Birkett* v. *Knickerbocker Ice Co.*, 110 N. Y., 504; *Potter* v. *Railway*, 21 Wis., 377. Those authorities of course sanction recovery in a case where the minor son, as in this case, had shown himself able and willing to make his own living and to contribute out of his earnings to the support of his parents. The analogy of other cases under the statute, and the terms and the spirit of the statute itself, authorize the extension of the recovery beyond minority in such a case.

If there are no parents, and the case is thus relieved of the legal obligation of the minor to them, but in their stead a sister as next of kin is shown to have been dependent upon and supported by a minor brother, his acts and declarations in reference to the aid extended would have the same probative force as though he were an adult, and if the proof warranted the expectation of continued support, a recovery on behalf of the sister would be sustained. The lack of probative force in the minor's acts arises, then, not from the fact of minority, but from the relationship of parent and child. But the question in every case under the statute is, does the evidence show a reasonable expectation of pecuniary advantage to the next of kin, whether it be a parent, sister, or another who stands in that relation? Recovery may be had in either case as readily upon a reasonable expectation of a gratuity as of the enjoyment of a legal right. If the loss of the decedent has deprived the next of kin of a legal right to services or support, that fact does not militate against his right to recover also for a gratuitous pecuniary advantage, which the proof shows he had the reasonable expectation of receiving if the life of the deceased had continued.

But as the acts and declarations of a minor who is capable of supporting the next of kin have the probative force to

establish the fact of the intention to continue to do so, if it can be shown that the minor son entertained that intention toward his father or mother, there is no reason for withholding the right to recover from them. If there is any difference between the difficulty of showing the probable future intent of an adult and that of a minor son in such a case, it is one of degree only; but that goes to the weight of the evidence without necessarily destroying its probative effect. It is for the jury to say whether a minor son, who has contributed from his earnings to the support of his parents, was actuated by filial affection which gave assurance of like conduct after majority, or whether his acts were prompted by a sort of parental coercion or other motive which rendered it probable that the experience of the past was not a safe guide by which to judge what his future conduct would have been.

But when the proof shows that the intent to aid the parent after majority has been manifested, a pecuniary injury to the parent when next of kin is established, within the meaning of the statute.

The jury was justified from the evidence in believing that the son's donations to his father would have continued if he had reached his majority, and that they would have reached the sum awarded by them. We are not therefore to disturb the verdict.

The judgment will be affirmed.