MEMPHIS, DALLAS & GULF RAILROAD COMPANY *v.* BUCKLEY.

Opinion delivered June 12, 1911.

1. DEATH—DAMAGES—EXCESSIVENESS.—Where, in an action by a mother to recover for the negligent killing of her son, the testimony showed that the deceased was 20 years old, that the mother's expectancy of life was 26 years, that plaintiff was single, and earning wages from $1.50 to $2.00 per day which he used for the benefit of himself and mother's family, and that he was industrious and looked after his

mother's business, a verdict of $2,500 in the mother's favor is not excessive. (Page 425.)

2. RAILROADS—DISCOVERED PERIL.—Where a deaf person, walking on a railroad track, was run over and killed by a train, and there was evidence tending to prove the trainmen discovered his perilous situation in time to avoid killing him, and that he gave no indication by his conduct that he had discovered the approach of the train, a finding of negligence on part of the railroad company will be sustained. (Page 426.)

3. SAME—CONTRIBUTORY NEGLIGENCE.—Contributory negligence is no defense to an action against a railroad company for killing a pedestrian whose peril was discovered in time to have avoided the killing. (Page 427.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

This suit was brought by the appellee as administratrix of the estate of Charles L. Buckley, deceased, for the benefit of the estate and also for the benefit of herself as the next of kin. The negligence alleged was that Charles L. Buckley was walking upon appellant's track, and that one of appellant's trains was following him; that the employees, after discovering his perilous situation, "negligently and carelessly struck, ran over and killed him." The answer denied the allegation of negligence, and set up the defense of contributory negligence. The jury returned a verdict in favor of appellee for $2,500, judgment was rendered for the same, and this appeal was taken.

*Sain & Sain*, for appellant.

1. Decedent being a trespasser, appellant owed him no duty other than to exercise ordinary care not to injury him after his perilous position was discovered. 81 Ark. 371; 62 Ark. 164; 74 Ark. 610; 63 Ark. 366. His contributory negligence being shown, the burden was upon appellee to show that appellant's employees in charge of the engine wantonly, wilfully and recklessly failed to exercise proper care and diligence to avoid injuring him. 69 Ark. 383; 76 Ark. 10; 77 Ark. 401; 47 Ark. 502; 36 Ark. 41; *Id.* 371; 45 Ark. 246; 49 Ark. 257. Where, as in this case, the testimony of the engineer in charge of the engine was consistent, reasonable and not contradicted, the presumption of negligence

on the part of the defendant was thereby overcome, and the jury were not authorized arbitrarily to reject such testimony. 89 Ark. 120; 82 Ark. 270. Before appellant could be held liable, it being shown that deceased was deaf, knowledge of his infirmity must be brought home to those in charge of the engine.   13 Am. & Eng. Rd. Cases 623; 91 Ky. 651; 25 S. W. 754; 7 Am. & Eng. Rd. Cases, 191; 71 Mo. 476.  A greater degree of care rests upon one who is afflicted, as by deafness, in crossing or walking upon a railroad track, than upon one whose senses are not impaired. 75 Tex. 583.

2.   There is no testimony to show wilful or wanton injury; and unless this is shown by the proof on the part of the plaintiff, or it can be fairly deduced from the proof on the part of the defendant, plaintiff cannot recover.

3.   Deceased was guilty of gross contributory negligence in that he was walking upon the track of appellant where he had no right to walk.  49 Ark. 257; 69 Ark. 380.

4.   The statutory presumption of negligence does not arise where the allegations of the complaint are that the deceased was killed after his perilous condition was discovered by defendant's employees, and recovery of damages is sought on this ground alone; and there is no presumption of wanton or wilful injury, but the burden of proof is upon the plaintiff to establish that fact by competent testimony.  47 Ark. 502; 36 Ark. 41; *Id.* 371; 45 Ark. 246; 46 Ark. 513; 24 Pa. 469; 71 Ill. 500.

*Hamby & Haynie,* for appellee.

The pleadings present a case of discovered peril, and it was tried solely on that question. The question of contributory negligence, as we understand it, was not an issue.

The right to presume that one will seek a place of safety fails when the situation or conduct of the party in peril indicates that he is unconscious of his danger, or where, for any other reason, it is obvious that he is not likely to extricate himself.  If persons in charge of a train are in doubt as to the condition or situation of a person on the track, it is their duty to resolve all reasonable doubts in favor of saving life.  109 N. C. 430; 14 L. R. A. 749; 92 Va. 354; 36 S. E. 773; 93 Ala. 209; 9 So. 468; 80 N. W. (Ia.) 682; 39 W. Va. 50; 19 S. E. 567; 2 Shear. & Redf.

Neg., (5 ed.) § 483; 4 Tex. Civ. App. 121; 23 S. W. 433; Greater care is required of a railroad company in all cases where it is apparent that the one in peril is not apprised of the danger. 60 Ala. 621; 109 N. C. 430. The last moment to which the presumption may be indulged that a person imperiled will escape to a place of safety is the last moment in which it would or ought to seem practicable to stop the train before collision. 109 N. C. 430; 77 Wis. 228; 46 N. W. 115; 42 Neb. 577; 60 N. W. 899; 63 Ill. App. 562; 164 Ill. 560; 46 Ark. 513; 50 Ark. 477; 46 Tex. 473; 3 S. W. 705. As applied to cases where such disability is not previously known, the "last moment" to which the presumption can be indulged is when, from all the circumstances, there is such an indication of bodily infirmity, or of disabled condition, or of imminent peril, that to a person of ordinary prudence the infliction of injury seems probable, if a proper effort is not made to avoid it. Shear. & Redf., Neg., 4th ed., § 99; 64 Miss. 784; 2 So. 171; 78 Hun 601; 29 N. Y. Supp. 490; 56 Cal. 513; 38 Am. Rep. 67; 92 Va. 354; 23 S. E. 733; 5 Sneed (Tenn.) 524; 73 Am. Dec. 149; 58 S. W. 255; 55 N. Y. Supp. 962.

WOOD, J., (after stating the facts). Appellee's expectancy was 26 years. The deceased was 20 years of age; lived with appellee, who was his mother. He was deaf, but otherwise unafflicted. He was the eldest of those living with his mother. He knew how to farm, and his mother depended upon him, as the other boys were younger and smaller. He helped to make the crops, and when through with that work would hire out. His wages would sometimes be from a dollar and a half to two dollars per day, and he would bring his money home and spend it for his own clothing and for the benefit of the family. He told his mother that he never expected to marry, but was going to remain with her. He was shown to have been industrious; one of the witnesses (a farmer) testifying that he never had a better boy to work for him, that he was a good hand, and that whenever there was any business to look after for his (decedent's) mother the decedent attended to it for her. The jury were warranted, from this evidence, in returning a verdict in favor of appellee in her own right in the sum of $2,500. Under the circumstances, it is reasonably certain that, had decedent lived, and, should his mother, the appellee, live to the full term of her ex-

pectancy, she would have realized more than the sum of $2,500 out of the contributions of her son. The decedent had an affection for his mother, and expressed the determination to remain with her. He was a good worker, and doubtless his earning capacity would have increased with experience of the years as they advanced, and therefore we are of the opinion that the judgment for the above sum is not excessive. *Railway Co.* v. *Davis,* 55 Ark. 462; *Little Rock, M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333.

On behalf of appellee, the evidence tended to show that the engineer in charge of the engine discovered the decedent walking on the track something near 1700 feet ahead of the engine; that the engineer sounded the whistle and continued to sound the same, but that decedent did not look around and gave no indications that he knew that the train was following him, and, notwithstanding this fact, the engineer made no effort to stop the train or to slacken its speed until it was too late to avoid the injury; that when the engineer did finally put on the air and shut off the steam it was impossible to stop the train until it had struck the decedent; that the train was something like 150 feet in length, consisting of the engine and tender, or tank, and two coaches; that the train was stopped that morning after the air was put on in something like 5½ or 6 rail lengths, or a distance of about 150 feet; that a train of this size, and running at the speed that this train was running on that day could have been stopped in about the distance it was stopped. There was testimony to the effect that the air-brake could have been put in operation instantly, as the witness expressed it, "at the bat of the eye." The shortest distance that the decedent was discovered by the engineer, according to the testimony on behalf of appellee, was not less than 951 feet. The evidence on behalf of appellee tended to show further that the body of decedent was lying near the rear end or the back coach, the train had not passed him, it was some 16 or 18 feet from the back of the coach. One witness testified that he was fireman on the train that morning, and that when the engineer first gave the alarm he looked up and saw the deceased right in the center of the track; that he watched him all the time, never taking his eyes off of him; that the deceased kept right down the middle of the track, and did not turn around and look back;

that the decedent did not start from one side of the track to the other.

On behalf of appellant, the evidence tended to prove that the engineer sounded the alarm as soon as he discovered the decedent on the track, giving four blasts of the whistle, and that when this was done the decedent turned as if he were looking backward over his shoulder and bore to the left of the center of the track as if he would step off, but looked around and got back in the middle of the track; then the engineer blew the whistle again, giving the stock alarm; that the decedent paid no attention to this, and then the engineer put the air on in the emergency, reversed the engine and gave the rail sand, still blowing the whistle. The engineer, in his testimony, said that the reason he did not get the train under control, so that he could stop it before running over the decedent, was that he did not think it necessary. In other words, he thought, when he gave the alarm for the decedent to get out of the way, he would do so. If he had known that the decedent was not going to get off the track, he could and would have stopped the train when he first saw him. He would have only lost a minute in doing this.

This testimony on behalf of the appellee and of the appellant made it a jury question as to whether or not the appellant exercised ordinary care, after discovering the perilous situation of the decedent, to avoid injuring him. The testimony is conflicting as to whether or not the decedent gave any indications by his conduct that he had discovered the approach of the train. The jury might have found that the decedent was oblivious to the approach of the train. This is the most natural and reasonable conclusion. For, if he had discovered it, he could and doubtless would have easily stepped from the track. Therefore, the jury were fully justified in accepting the testimony on behalf of appellee to this point and in rejecting that on behalf of appellant.

The court properly submitted the question as to whether appellant was negligent after discovering the peril of the decedent. The law on this subject has been announced in numerous decisions of this court, and it is unnecessary to repeat what we have so often said. *St. Louis, I. M. & S. Ry. Co.* v. *Wilkerson,* 46 Ark. 513; *Sibley* v. *Ratliffe,* 50 Ark. 477; *St. Louis S. W. Ry. Co.* v.

*Thompson,* 89 Ark. 496; *St. Louis S. W. Ry. Co.* v. *Jackson,* 91 Ark. 16. The instructions of the court were in conformity with the law as announced in the above cases, and no useful purpose could be subserved in discussing in detail the various prayers for instructions given and refused.

The court did not err in ruling that contributory negligence was not a defense in cases of this kind.

We find no reason for the reversal of the judgment. It is therefore affirmed.