ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* JACKS.

Opinion delivered November 18, 1912.

1. DEATH—DAMAGES—EXCESSIVENESS.—An award to parents of $5,000 for the negligent killing of a boy seventeen years old was not excessive where decedent had an expectancy of 44 years, the father of 14.09 years, and the mother of 17.41 years, as shown by the mortuary tables; where decedent contributed the whole of his earnings to their support, and where his yearly salary, less his expenses for food and clothing, amounted to $540, and where decedent had stated that his parents could depend on him as long as he lived.   (Page 350.)

2. SAME—DAMAGES—ELEMENTS TO BE CONSIDERED.—While the amount of a son's contributions to his parents, calculated upon the basis that they would continue without interruption for the term of his expectancy of life, should be discounted on account of the contingencies to which they were subject, the jury may take into consideration the fact that the son was in line of promotion, and that it was reasonably probable that his earning power would be increased.   (Page 350.)

3. SAME—EVIDENCE—PARENT'S DEPENDENCE.—Proof that a parent was afflicted and dependent on his son is relevant to the issue whether the parent suffered any pecuniary loss by reason of the son's death. (Page 351.)

4. MASTER AND SERVANT—INSTRUCTION—ASSUMED RISK—CONTRIBU-TORY NEGLIGENCE.—In an action against a master for the negligent death of a servant, it was not error to refuse to instruct that "if you find from the evidence that the injury and death of plaintiff's intestate was due to a dangerous position assumed by him, and which was wholly unnecessary in the discharge of his duties connected with his employment, then plaintiff can not recover;" for, although the jury may have found that intestate at the time of his death was in a dangerous and unnecessary position, it was still a jury question whether he assumed the risk or was guilty of contributory negligence. (Page 352.)

Appeal from Desha Circuit Court; *Antonio B. Grace,* Judge; affirmed.

STATEMENT BY THE COURT.

Elkins Jacks, a boy a little over sixteen years of age, was in the employ of the appellant as clerk to its storekeeper at McGehee. The appellant was handling its supplies from two box cars. They were placed on its coach track, at McGehee station. The cars were in bad condition, one of them having the drawbar out, permitting the cars to come within six or eight inches of each other. There were doors in the ends of the two cars so that one could pass from one car to the other. It was Jacks's duty to go in these cars and get out supplies for the employees who asked for them. It was his duty to go from one car to the other, and to stay around these cars. The appellant had been using these cars as a store room for four or five days while its regular store room was being repaired. Jacks had been working there in the store one or two months. There was nothing between these store room cars and the end of the track. The way to protect them from being bumped into by other cars on the track was to place a blue flag in the center of the track some distance above them. The rule required that no train should go over the flag. The servant whose duty it was to place the flag did not look to see that morning whether the flag was there. There was no reason to suppose that the cars would be moved. They were placed on the coach track for the special purpose of a store room.

While the switch crew was making couplings at McGehee on the morning of September 12, 1910, the switch engine caused a collision to take place with the cars where young Jacks was engaged in the discharge of his duties which caused his death. After the collision occurred Jacks was observed with one foot in one car and the other foot in the other car, standing up. He had his head between the two cars. When the engine released the pressure from the cars, he fell forward into the car.

There was a bolt projecting out of the end of one of the cars about as high as a man's head if he had been between the cars. This bolt was four or five inches from the door and projected out about one inch. There was blood on the bolt. The base of Jacks's skull was fractured, and both of his ears were bleeding. The blow against his ears on both

sides killed him, causing concussion of the brain. He died instantly. His administrator brought suit against the appellant, alleging that it negligently permitted and caused its engine to go upon the track upon which the cars were standing and collide with the cars while Jacks was at work, without any kind of warning to Jacks of their approach, with such violence that he was thrown about and knocked against the said car or some object or objects thereon or thereto attached and thereby injured him in such manner that he soon thereafter died from the effect of such injuries. The suit was brought for the benefit of Jacks's father and mother. Appellee alleged that they were entitled to his earnings until he reached his majority, and that he would have continued to have contributed to their support thereafter.

The appellant denied the allegations of the complaint, and pleaded contributory negligence and assumption of risk on the part of Jacks.

A witness was permitted, over the objection of appellant, to state that Jacks's father, on account of deafness, often did not have any employment.

The jury returned a verdict in favor of the appellee for $5,000. Judgment was rendered for this sum, and the appellant brings this appeal. Other facts will be stated in the opinion.

*J. C. Knox* and *Thos. B. Pryor,* for appellant.

1. There is no liability, under the evidence. The accident, under the undisputed evidence, was one which could never have been anticipated, much less foreseen, by the most cautious person. Pollock on Torts (8 ed.), 41; 213 U. S. 674. The court therefore erred in refusing a peremptory instruction in favor of appellant.

2. Evidence of the father's affliction and inability to work was clearly inadmissible, and should have been excluded.

3. The verdict is excessive. 42 Ark. 527; 57 Ark. 377-387; 55 Ark. 384; *Id.* 463; 33 Ark. 350.

*M. Danaher* and *Palmer Danaher,* for appellee.

1. The very purpose for which the cars were placed where they were and for which they were being utilized would negative the idea that they might be moved. It was appel-

lant's duty to use reasonable care not to cause the fall, and, under the circumstances of the case, it was negligent to move the car at all without first giving warning. 148 S. W. (Ark.) 647; 93 Ark. 15. There was no ground whatever for a peremptory instruction in favor of appellant.

2. Evidence of the father's affliction and of his inability to work was admissible for the purpose of showing that he was dependent. 48 Ark. 333. The age, circumstances and condition of the next of kin are always admissible in evidence. 11 Am. St. Rep. 482; 60 Kan. 113; 42 Ill. 169; 25 Am. & Eng. R. R. Cases, 338; 6 Id. 490.

3. The verdict is not excessive. 121 Ala. 50; 55 Ark. 462; 148 S. W. 822; 118 Pac. 1076; 156 Ill. App. 602; 141 S. W. 72; 141 S. W. 374.

Wood, J., (after stating the facts). The appellant contends that the verdict was excessive. Jacks had an expectancy of forty-four years; his mother an expectancy of 17.41 years, and his father an expectancy of 14.09 years, as shown by the mortuary tables. Young Jacks was earning at the time of his death a salary of $55 per month, and was in line of promotion. He was industrious and intelligent. He contributed the whole of his earnings to his own and his father's and mother's support. He had stated that he would "stand by them (his father and mother) as long as he lived;" said they "could depend on him." At the time of his death his yearly salary, less his expenses for food and clothing, would have been $540. During the expectancy of his mother this income would have amounted to $9,396. That amount reduced to its present value, according to the Carlisle tables, would be $5,365.11.

In *Railway Co. v. Robbins*, 57 Ark. 377, this court said: "The amount of the contributions, calculated upon the basis that they would continue without interruption for the term of his expectancy of life, should have been discounted on account of the contingencies to which they were subject." But, while this is true, it is also true that the jury were warranted in taking into consideration the fact that Jacks was in line of promotion, as shown by the evidence, and the reasonable probability that he would have been promoted and his earning power thereby increased.

As was said by us in the recent case of *St. Louis, I. M. & S. Ry. Co.* v. *Brogan, post* p. 533, quoting from *Railway Co.* v. *Sweet,* 60 Ark. 550: "The jury doubtless weighed all the probabilities of loss from sickness and other various contingencies likely to arise during the course of a man's life, and balanced these against the probabilities also of an increase of efficiency in money-making power."

There is nothing in the amount of the verdict to indicate that the jury pursued any improper method in arriving at the same, and there is nothing in the record to warrant us in saying that they were actuated by passion, prejudice or sympathy. Their verdict was responsive to the evidence, and while the verdict, in the absence of pain and suffering, reached the limit perhaps of the amount that should have been allowed under the circumstances, yet we are of the opinion that Jacks's father and mother were not more than fully compensated for his death. Jacks was a bright, healthy, industrious boy, of good habits and affectionate disposition toward his parents. The proof makes it reasonably certain that he would have continued to contribute his earnings to their support as long as they lived. With the disposition and ability that he possessed, according to the proof, it is reasonably certain that he would have contributed to them, had he lived, during the course of their lives as much as the jury awarded by their verdict.

Appellant contends that the court erred in admitting evidence of the father's affliction (and inability to obtain work on that account) to go to the jury. We are of the opinion that this evidence was proper. It tended to show that young Jacks's father was dependent. The court was careful to tell the jury that the affliction of the father was not an element of damages in the case, but was only for the purpose of showing why his father was unemployed, and therefore needed his son's assistance. The instruction given on the measure of damages excluded any affliction of the father as an element of damages. Testimony showing the pecuniary circumstances of the next of kin calling for help from those upon whom they are dependent is certainly relevant and proper to be considered. It is relevant to the issue as to whether or not by reason of the injury and death the next of kin have

suffered any pecuniary loss.  See *Cooper* v. *Railway Co.*, 11 Am. St. Rep. 482, and cases there cited.

The instructions of the court on the issues of negligence, contributory negligence and assumed risk covered every phase of the evidence and were exceptionally free from error.  The charge was in accord with the doctrine on these subjects often announced by this court, and it is unnecessary to discuss them here.

Of the instructions given appellant only criticises No. ·7.* This instruction was based upon the evidence, and was correct.

The court refused several prayers for instructions offered by appellant.†  Two, three and ten of these were correct, but they were fully covered by instructions which the court

---

*"7. In passing upon the question of contributory negligence on the part of the deceased, and of assumed risk, you must take into consideration his age, experience, intelligence and means of knowledge; and, after considering these matters, if you believe from the evidence that the deceased, on account of his youth or inexperience, did not know or fully appreciate the dangers incident to the act or employment in which he was engaged at the time of the injury complained of, then you can not hold him guilty of contributory negligence, nor can he be held to have assumed the risk."

†Defendant's requests for instructions Nos. 2, 3, 7 and 10 were as follows:

"2. The court instructs the jury that the burden of proof in this case is upon the plaintiff to establish each and every material allegation of his complaint, and if he fails to discharge this duty, then your verdict should be for the defendant."

"3. It is alleged in the complaint that the servants of defendant negligently and carelessly, while operating an engine of cars without any kind of warning to plaintiff's intestate of their approach, caused the said engine and cars to collide with the cars in which plaintiff's intestate was at work, with such violence that he was thrown from his feet thereby receiving injuries from which he soon after died.  Before the plaintiff can recover in this case, the burden is upon him to establish that plaintiff's intestate was killed at the time and in the way and manner alleged in the complaint."

"7. If you find from the evidence that the injury and death of plaintiff's intestate was due to a dangerous position assumed by him, and which was wholly unnecessary in the discharge of his duties connected with his employment, then plaintiff can not recover, and your verdict should be for the defendant."

"10. The court instructs the jury that the law does not presume negligence from the mere happening of the accident."

gave.  Instruction No. 7 was erroneous.  It did not follow as a matter of law that, if Jacks assumed a dangerous and wholly unnecessary position, appellant was not liable; for, although the jury may have found that Jacks at the time of his death was in a dangerous and unnecessary position, it was still a question for them to determine as to whether or not in so doing he assumed the risk or was guilty of contributory negligence.

Finding no error, the judgment is affirmed.