St. Louis & San Francisco Railroad Company v. Newman.

Opinion delivered November 11, 1912.

1. Railroads—negligence—discovered peril.—Evidence tending to prove that employees in charge of defendant's train discovered the perilous situation of plaintiff's decedent in time to avoid killing him, but failed to exercise ordinary care to that end, will sustain a finding of negligence on defendant's part. (Page 285.)

2. Same—discovered peril—instruction.—Where there was evidence tending to prove that plaintiff's decedent was killed by a train on defendant's track at a time when he appeared to be insensible of his danger, an instruction that if the trainmen had reason from the appearance of the decedent to believe that he was suffering from drunkenness or other cause, and thereby was insensible to the danger, it was the duty of the trainmen to use proper care to avoid injuring him, was not prejudicial because there was no proof that decedent was drunk, if there was proof that he was in a place of danger which he failed to appreciate. (Page 288.)

Appeal from Crittenden Circuit Court; *Frank Smith,* Judge; affirmed.

*W. F. Evans* and *W. J. Orr,* for appellant.

1.    The objection to, and error in, the court's modification of instruction 2, requested by appellant, is that there is no evidence that deceased was "insensible of his danger or unable to avoid it." In the absence of proof to the contrary, the legal presumption is that the man was not mentally nor physically incapacitated. 49 Ark. 257. There is no proof whatever in the record to support the allegation in the complaint that deceased was drunk. He was in good health when last seen prior to the time of the accident. The presumption is that he remained so. 142 S. W. (Ark.) 1122; 131 S. W. (Ark.) 958; 82 Ark. 522.

2.    Instruction 4 given by the court but emphasizes the error in instruction 2 as modified, and gives a wider range for conjecture. The facts in the Wilkerson case, 46 Ark. 513, from which this instruction was taken, show that the deceased when he was seen *"was staggering and had the appearance of being very drunk,"* whereas here there is no such proof. The law fixes the duty of trainmen toward trespassers on a railway track, and, such being the case, the jury should not be allowed to substitute their own ideas as to that duty. 64 Ark. 336.

*A. B. Shafer,* for appellee.

The evidence shows the distance from the north end of the trestle to where Nass was struck; that he was plainly seen upon the trestle, and that the engineer and fireman saw his perilous position more than a quarter of a mile from where he was struck.

The court correctly stated the law of the case in the modification of instruction 2 and in instruction 4.    46 Ark. 520; 138 S. W. 995; 90 Ark. 398, and cases cited.

MCCULLOCH, C. J.    The plaintiff's intestate, Hans Nass, was run over and instantly killed by a freight train on a trestle of defendant's railroad near Tyronza, a station in Poinsett County, Arkansas, and this action was instituted to recover damages for the benefit of the widow and next of kin.

Nass was a trespasser on the track, and the question in the case is, whether or not the train operatives failed to exercise care, after making discovery of the perilous situation of deceased, to prevent injuring him.    The case was tried upon this theory, and the trial resulted in a verdict in favor of the plaintiff assessing damages.

The chief ground urged for reversal is that the evidence is not sufficient to sustain the verdict.    Nass was a stranger in those parts, and had only been living at Tyronza for a short time.    He was accustomed to using, on the railroad, a speeder which belonged to a timber inspector, but did so without permission of the railroad company.    On the day that he was killed, he took the speeder and rode it to Deckerville, another station south of Tyronza, and was returning about sundown, when he was run over by the train.    There is evidence tending to show that he went to Deckerville for the purpose of getting some whisky at a saloon located there.    Only one person witnessed the occurrence, except the trainmen themselves. This was a man named Leonard, who was a farmer, living a short distance from Tyronza, and who was starting from his field towards his house when it occurred.    He walked up on the track, started towards home, when a freight train came from the north, and he stepped off the track to allow the train to pass.    As he did so, he noticed a man riding a speeder on the trestle.    He testified that the man appeared to have stopped.

He afterwards measured the distance and found that he was about 2,220 feet from the north end of the trestle when the train passed him. He states that shortly after the train passed, and obscured his view of the man on the trestle, the alarm signal was given by blowing the whistle, and was continued until the train reached the trestle and stopped. His measurement showed that the engine was 1,192 feet from the north end of the trestle when the alarm was first sounded. He did not go down to the trestle to see whether injury had been inflicted, as he supposed, so he states, that the train had been stopped in time to prevent injuring the man; but, after he learned that the man had been killed, he examined the place and saw the evidences of the speeder being knocked from the trestle ninety-four feet from the end of the trestle. Another witness, who lived at Tyronza, testified that as soon as he heard of the accident he went down to the scene and found the broken speeder lying in the water near the trestle, fifty or seventy-five yards from the north end. The trestle was 635 feet long and about thirty feet high, spanning a shallow body of water called Dead Timber lake. The evidence justified the jury in concluding that Nass, when struck by the train, was sitting on his speeder on the trestle from ninety to 150 feet from the end, and that the trainmen could see that he had stopped. The evidence warranted the conclusion that the trainmen did see him from the fact that they began to give the alarm 1,192 feet from the north end of the bridge, which placed them at that time at a distance of about 1,300 feet from deceased's position on the trestle. There was also evidence to the effect that the train could have been stopped in a distance of from 100 to 200 yards, according to the favorable or unfavorable conditions with reference to the working of the air and the amount of tonnage in the train. In that state of the proof, it is our opinion that the jury was warranted in finding that the trainmen, that is to say, the engineer or fireman, discovered the perilous situation of this man in time to have avoided the injury. They could see him on the trestle, where he appeared to have stopped, and as they approached him should have known that he was in a position of peril of which he was insensible or from which it was impossible for him to extricate himself. He was facing north, and one

who discovered his presence could see that he was unable to make his escape from the trestle. The fact that the alarm was continued down to the point where the train stopped shows that the trainmen were aware of his peril all during that time, and their failure to stop the train at an earlier moment is sufficient to sustain the charge of negligence. The evidence shows that the engine ran by him some distance before the train was stopped. None of the trainmen testified in the case; therefore, it is not shown just how far the engine went by before it was stopped, and the jury was left to draw inferences only from the situation as described by the witness Leonard and the other witness who testified with reference to the place where the broken speeder was found. The defendant did not attempt to account in any way for the happening of the injury or to introduce evidence explaining how it occurred. We are of the opinion that the situation described by the witness warranted the inference that the engineer or fireman saw the man on the trestle and was aware of his perilous situation, but failed to exercise ordinary care to prevent injuring him. The verdict is therefore sustained by the evidence.

The court instructed the jury, upon defendant's request, that if the employees in charge of the train saw Nass on the trestle at a distance ahead sufficient to enable him to get out of the way before the train reached him, "and they were not aware that he was deaf or insane or from some other cause insensible of danger or unable to get out of the way, they had the right to rely on human experience and presume that he would act upon the principles of common sense and the motives of self-preservation common to mankind in general, and get out of the way, and they had the right to go on without checking the speed of the train until they did see, if they did, that he was not likely to get out of the way," etc.

The court, over the defendant's objection, modified the instruction by adding the following:

"If, however, Nass was seen upon the track and was known to be, or from his appearance gave the operatives of the train good reason for the belief that he was, insensible of his danger or unable to avoid it, then they would have had no right to presume that he would have gotten out of the way,

but should have acted on the hypothesis that he might not or would not, and then should have used the proper degree of care to avoid injuring him. Failing in this, the railroad company would be responsible in damages if by the use of such care they might have avoided injuring him, if they did injure him. There is no presumption that Nass was insensible of his danger, but that is a fact that would have to be established by the plaintiff by the greater weight of evidence."

The court also gave the following instruction, to which the defendant objected and saved its exception:

"4. The court instructs you further that if from the evidence in this case it has been shown that the decedent, Hans Nass, was upon a railroad bridge near Tyronza station on the date mentioned, and if it be further shown that the employees of the railroad company operating its railroad train saw him on the track far enough ahead of the train to get out of the way, if you believe from the evidence that they were not aware that he was deaf, or insane, or from some other cause insensible to the imminent danger of his position, or unable to get out of the way, then the agents and servants of the railway company had a right to presume that he would do so, and to go on without checking the speed of the train until they saw he would not do so it became their duty to give extra alarm by bell or whistle, and if the agents or servants of the railroad company then saw that that was not heeded it became their duty to stop the train, if possible, in time to avoid the injury to him. However, if you believe from the evidence in this cause that the servants and agents of the railroad company had reason, from the appearance of the decedent, to believe that he was suffering from drunkenness or other cause, and thereby was insensible to the imminent danger, or was in such a situation as to be unable to avoid it, then the servants and agents of the railroad company must presume that he might or would not get out of the way, and it became their duty to use proper care to avoid injuring him, and, unless they did use proper care to avoid injuring him the railroad company would be liable, and your verdict should be for the plaintiff."

The particular part of this instruction to which objection is made is that which submits the question of the appearance

of the deceased as to his insensibility of danger on account of drunkenness or other cause. It is argued that the evidence fails to show that he was in any state of intoxication, and therefore it was erroneous to submit that question. The instruction is abstractly correct. *St. Louis, I. M. & S. Ry. Co. v. Wilkerson,* 46 Ark. 513. It can scarcely be said that there is any testimony in the record that deceased was intoxicated at the time; but the point of the case for submission to the jury is whether or not he was in a position of danger which he failed to appreciate, or whether his position was such that he could not extricate himself from it. The evidence shows that he had stopped on the trestle, and this was sufficient to warrant the finding that he was not aware of his danger, and was making no effort to extricate himself. The question was, whether or not he was insensible of his danger, and not the cause of his insensibility. The question was submitted to the jury, and we fail to see how there could have been any prejudice from including drunkenness as the cause. Whatever the cause may have been, the jury necessarily found by their verdict under those instructions either that deceased was insensible of his danger and was making no effort to extricate himself from it, and that defendant's servants were aware of this, or that he was in a position where he could not extricate himself from the danger, even if he knew of it, and the trainmen were aware of that, and failed to exercise ordinary care to prevent injuring him. In either event, defendant was liable, and there could not therefore have been any prejudice in submitting the question whether drunkenness was the cause of decedent's insensibility to danger if such was his condition.

Our conclusion is that the case went to the jury upon instructions which fairly submitted the issues, and which were in no wise prejudicial to defendant. The judgment is therefore affirmed.

Mr. Justice Smith did not participate.