CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. JONES.

Opinion delivered June 19, 1916.

1. RAILROADS—INJURY TO PERSON ON TRACK—LOOKOUT.—Deceased while walking on defendant railway company's track, was struck by a train and killed. In an action by his administrator for damages, *held*, the evidence showed that he was seen or could have been seen, by the engineer and fireman, for a distance of half a mile before deceased was struck, and that he remained on the track until he was struck, and that it was a question for the jury whether his peril was discovered by the train operatives in time for them to have avoided the injury.

2. RAILROADS—DUTY TO TRESPASSER ON TRACK.—The operatives of a railway train owe no duty to trespassers upon the railway tracks, until they discover, or by the exercise of ordinary care could have discovered, that the trespasser was in peril.

3. RAILROADS—INJURY TO PERSON ON TRACK—NEGLIGENCE—QUESTION FOR JURY.—Where deceased, walking on defendant railway company's track was struck by a moving train and killed, *held*, under the evidence it was a question for the jury whether the deceased was unconscious of his danger, and whether the engine operatives could, by the exercise of ordinary care have discovered his peril, in time to have avoided injuring him.

Appeal from Perry Circuit Court; *Robt. J. Lea,* Judge; affirmed.

STATEMENT BY THE COURT.

This was a suit instituted by the appellee as administrator of the estate of T. W. Edmondson, deceased, against the appellants to recover damages for the benefit

of the widow and next of kin for the alleged negligent killing of Edmondson.

The complaint alleged that Edmondson was walking on the track of appellant along a pathway which was a regular and customary pathway for pedestrians; that appellant's train was in charge of Michael Mann, as engineer, who suddenly and violently ran the train upon Edmondson, killing him; that the killing was the result of a failure of Mann and other employees on the train to keep a lookout as required by the statute; that if such lookout had been kept they could have discovered Edmondson's perilous situation on the track in time to have avoided killing him. The appellant denied the allegations of negligence and set up the defense of contributory negligence.

The testimony on behalf of the appellee tended to show that Edmondson, on the morning of the killing, was intoxicated; that he had his gun and shells, and in this condition was walking upon appellant's track going west from the town of Houston; that appellant's track west from the town of Houston was straight for about a mile. The attention of a witness was attracted by the blowing of the train whistle for the station before the train came in sight. Witness observed Edmondson walking on the track toward the west. The train was approaching him and got so close to him that it threw a shadow over Edmondson and witness could not see him, but almost immediately afterward he saw him go up in the air. Edmondson was on the mound between the rails just before he was struck. Witness had been watching him for some time before he was hit and did not see him step off of the track before he was struck. Edmondson was about a half mile west of the depot when he was hit, and the track was clear for half a mile beyond where Edmondson was. The track at that point was down grade toward Houston. Witness did not hear any ringing of a bell or any alarm whistle until the back-up whistle after the accident occurred. It was a little hazy that morning and the wind

was blowing, but witness could see the man on the track. The only whistle that witness heard was the station whistle. Witness did not observe any indications that Edmondson was aware of the approach of the train.

Another witness for the appellee testified that he was at the depot on the platform at Houston and witnessed the accident in which Edmondson was killed. He saw Edmondson walking up the track and as the train approached him witness watched him more closely and continued to watch him until he was hit. Edmondson was "walking along up the track with his head down." He never got out from between the rails from the time witness first saw him until he was struck. Witness heard the train whistle for the station before it came in sight. Witness could see something like three-quarters of a mile up the track. The train did not whistle after it whistled for the station until it sounded three back-up whistles after the accident occurred. Edmondson did not seem to be aware of the danger. Just before he was struck, or about the same instant, he seemed to get a little to the right. No bell was ringing. Witness watched Edmondson all the time after the train came in sight and he remained on the track until he was killed. Witness' attention was attracted to the "condition he (Edmondson) was walking." Witness "thought he was sick, or that something was the matter." Witness could not see "whether he had his hat pulled down over his eyes, but could see he had his head drooped."

It was shown that the people usually walked along the center of the track at this point; that such was the custom. They could walk along the side of the track if they wanted to. One witness testified that "west from the point where Edmondson was struck there is a straight unobstructed view for about half a mile. There is nothing to keep the engineer from seeing a man coming up the track. The track is straight for a mile west of the depot." There was testimony tending to show that

when Edmondson was struck he was carried from forty to forty-five feet.

The testimony of the engineer and fireman, who were on the train at the time Edmondson was killed, tended to show that they saw a man coming up the center of the track before the whistle was blown for the station. They got in about two telegraph poles from the man and started to blow the whistle when the man stepped off of the track. The engineer's view was then cut off by his engine; the engine had a large boiler.

In a second after the engineer lost sight of the man the fireman said to him, "Stop! that man started to walk over the engine." The engineer put on the emergency and stopped as quickly as he could. His train went about eight or nine hundred feet before it stopped. When he first saw the man on the track he was something like four telegraph poles ahead of the engine, and as the engine approached him he stepped off on the fireman's side and did not get back on the track until after the view of the engineer was cut off by his engine. The engineer did not know that he was struck until his fireman jumped down and threw up his hands. The man was walking toward the engine and there was nothing in his appearance to indicate that he would not get off and he did get off.

The fireman testified: "When we got about two pole lengths from him, or maybe three, he stepped out from between the rails and got down from the ends of the ties. When we got down closer he got over further to the bank, and just before we got to him he took two or three steps up toward the ties, and the pilot beam hit him. We were just two or three steps from him, right on him, when he stepped in front of the train. He had his face toward us, looking up the track."

The court instructed the jury: "If you find from the evidence that the deceased was walking on the track of the defendant railway company toward the train, and that he was unaware of its approach, or was incapable from any cause of caring for himself and avoiding the

danger, if any, and was in a perilous position, and if you find that the engineer in charge of the engine saw him on the track, and by keeping a constant lookout ahead should have discovered his perilous condition and danger in time, by the use of ordinary care and prudence, to have warned him of the approach, or, if necessary, to have stopped the train, and could have prevented the injury, and that he negligently and carelessly failed to do so, and that by reason thereof deceased was injured and death resulted, * * * the verdict will be for the plaintiff, even though you find the deceased was wrongfully on said track and guilty of negligence on his part.''

And the court, at the request of appellant, instructed the jury to the effect that if Edmondson was walking on or near the railroad track toward the approaching train and apparently aware of its approach, there was no duty on the part of the operatives of the train to sound any alarm, nor to attempt to stop the train or cause it to slow down until such time as it became apparent that the deceased did not know that the train was coming, or knowing that, had determined upon putting himself in the way of the train for the purpose of letting it strike him, or was incapable from any cause of appreciating the danger and avoiding it.

And, further, that if Edmondson stepped off of the railroad track and was walking in a place where he would not be struck by the train as it passed him, and that just as the train reached the point where he was walking, he stumbled or stepped close enough to get struck by the engine, and thus was killed, neither the defendant Mann nor the railway company was liable, and their verdict should be in favor of both the defendants.

And, further, that neither the railway company nor Mann, the engineer, was liable if Mann acted as an ordinarily prudent person would have acted under the circumstances after seeing Edmondson on the track coming toward the train.

And, further, "the mere fact that the deceased, Edmondson, was struck and killed does not entitle the plaintiff to a verdict at your hands; but before either of the defendants is held liable, the engineer must have been guilty of negligence as defined in these instructions."

The court refused to give appellants' prayer for a directed verdict in their favor. The court also refused appellants' prayers to the effect that appellant railway company's engineer and fireman were under no duty to stop the train or check its speed or sound the alarm because they discovered a person walking on or near the railroad track; that they had a right to presume that such person would get out of the way of the train without danger to himself, and to act on this assumption, and that the defendant would not be liable for any failure on the part of the operatives to stop the train or sound a warning unless such operatives discovered in time to have avoided the accident that the deceased did not know the train was coming or that knowing it he determined to put himself in the way of the train.

From a judgment in favor of the appellee this appeal has been duly prosecuted.

*Thos. S. Buzbee* and *H. T. Harrison,* for appellant.

1. Under plaintiff's version of this case, deceased either committed suicide or did just what a person would do who selected such a method of suicide. It does not present a case of negligence of defendant and contributory negligence on the part of deceased. It is a catastrophe deliberately brought about by the wilful and wanton acts of deceased or by conduct open to no other explanation. The court should have told the jury it was the folly and recklessness of the man, and not the negligence of the company which caused death. 3 App. Cas. 1155.

2. The rule of liability under the doctrine of discovered peril in case of trespassers is well settled. 62 Ark. 170; 47 *Id.* 497; 93 *Id.* 579; 83 *Id.* 300; 3 App. Cas. 1155.

3. No negligence whatever was proven, and the court erred in its instructions to the jury. 107 Ark. 202; 46 *Id.* 513.

*T. N. Robertson* and *E. H. Timmons,* for appellee.

1. The evidence shows the case of a man under the influence of strong drink, thereby rendered subconscious, unappreciative of danger and evidently incapable of taking care of himself. This was manifest if a lookout had been kept as the law requires. The track was straight for half a mile. No alarm was given nor effort made to check the train. Even if a trespasser, the company can not wantonly, recklessly or negligently kill him. The law of discovered peril and negligence is well settled in this State. 46 Ark. 513; 62 *Id.* 170; Acts 1911, p. 275.

2. There is no error in the court's charge. Cases, *supra.*

WOOD, J., (after stating the facts). The testimony of appellant's engineer and fireman show that they were keeping a lookout and that they saw Edmondson on the track but that he left the track and then again stepped upon it so suddenly that they did not have time, after doing all in their power to stop the train, to prevent the same from killing Edmondson. But the testimony on the part of appellee warranted the jury in finding that Edmondson did not leave the track from the time the whistle first blew for the station until he was struck by the train; that he was walking upon the track, with his head "drooped."

If Edmondson did not leave the track from the time appellee's witnesses discovered him walking on the same until he was struck by the train, then the engineer and fireman saw or could have seen his perilous situation in time, by the exercise of ordinary care, to have prevented injury to him, for the witnesses for appellee testified that their attention was drawn by the whistling of the train for the station, when they noticed that there was a man walking on the track approaching the train; that the whistle sounded before they could see the train, and that when

the train came in full view Edmondson was about half a mile from it. Therefore, if the testimony of the witnesses for the appellee was true, the engineer and fireman saw, or by the exercise of ordinary care, could have seen Edmondson upon the track in ample time to have avoided injuring him if he had remained on the track; yet they say that he left the track and returned to it so suddenly that it was impossible for them to have prevented killing him.

(1-2)  It will thus be seen that there was a sharp conflict in the evidence as to whether Edmondson left the track at all after he was seen by the engineer and fireman, and the jury were warranted in finding that he did not leave the track. Therefore, giving the evidence its strongest probative force in favor of the appellee, it must be accepted as an established fact that Edmondson was seen, or could have been seen, by the engineer and fireman for a distance of half a mile walking upon appellant's track, and that he continued on the track until he was struck by the engine. Nevertheless, this fact alone would not render the appellant liable, for in walking upon appellant's track Edmondson, under the circumstances, was a trespasser and appellant owed him no duty until its employees discovered, or by the exercise of ordinary care could have discovered, that he was in a perilous situation.

Appellant's engineer and fireman testified that there was nothing in Edmondson's appearance to indicate that he would not get off of the track and that he did get off, and if this testimony was true, of course appellant's servants were not negligent in failing to sound the alarm, or slow down, or stop the train in order to have prevented the injury. But here again there was a sharp conflict in the evidence. The testimony of a witness on behalf of the appellee was that Edmondson was "walking along up the track with his head down;" that he had his head "drooped." Witness thought from this that he was sick or something was the matter.

(3)  Counsel for the appellant contends that this testimony was contrary to the physical facts and should

not have been believed by the jury in contradiction of the testimony of appellant's witnesses to the effect that Edmondson was walking with his eyes open right in the face of the advancing train, and in contradiction of the testimony to the effect that he had good eyes and ears, and therefore must have been aware of his danger. But we can not say as a matter of law that it was impossible for the appellee's witness to have seen that Edmondson was walking with his head down. This was a question for the jury. Accepting the testimony of this witness on behalf of the appellee, the jury were warranted in concluding that Edmondson was oblivious of the rapidly approaching train and that the appellant's servants discovered or might have discovered his condition by the exercise of ordinary care in time to have prevented the injury. These were issues of fact, and they were submitted under instructions which correctly declared the law as announced in many decisions of this court. See *St. Louis, I. M. & S. Ry. Co.* v. *Wilkerson*, 46 Ark. 513; *Memphis, Dallas & Gulf Rd. Co.* v. *Buckley*, 99 Ark. 422, and cases cited; *St. Louis, I. M. & S. Ry. Co.* v. *Scott*, 102 Ark. 417-421; *St. L. & S. F. Ry. Co.* v. *Newman*, 105 Ark. 284-288-9; *St. Louis, I. M. & S. Ry. Co.* v. *Morgan*, 107 Ark. 202-218-219.

Appellant's prayers for instructions which the court refused were fully covered by those given.

The judgment is therefore correct and it is affirmed.