CRAWFORD *v.* CENTER.

4-4455

Opinion delivered December 7, 1936.

*W. J. Tate, J. M. Shinn* and *Isgrig & Robinson,* for appellants.

*Hosea Leathers* and *Shouse & Walker,* for appellee.

HUMPHREYS, J. This is an appeal from a judgment rendered in the circuit court of Boone county against appellants in favor of appellee for $150 for the benefit of the estate of Clarence Sneed, deceased, and $5,000 for the benefit of Essie M. Sneed, the mother and next of kin of said deceased.

The judgment was rendered on account of the negligence of the driver of a truck owned by appellant, J. R. Crawford, in veering from the north side of highway 62 over to the south side thereof and colliding with the automobile of Clarence Sneed, demolishing same and killing him. The collision occurred just about dark on the 29th of November, 1934, close to Alpena and near the foot of a hill around which the highway curved. The truck and attached trailer were loaded with freight weighing 10,000 pounds and was traveling west down the hill. The deceased was traveling east in a Chevrolet coupe and had started up the hill. There were two drivers in the truck, who relieved each other at intervals. Lee Ragsdale was driving the truck at the time of the collision, and Frank Seitz was sitting in the seat beside him. Both of the drivers were made parties defendant with J. R. Crawford, but the trial court dismissed the cause against Frank Seitz, as there was no evidence tending to show that he was engaged in operating the truck at the time of the collision. Another young man was in the car with Clarence Sneed, who was badly injured, but whose whereabouts was unknown at the time of the trial. The only eye-witnesses to the collision who testified were the drivers of the truck. They testified, in substance, that the truck was being driven down the hill slowly at the rate of about twenty miles an hour on the north side of the road, and, when they saw the Chevrolet coupe approaching, they turned out to the right, or north, even onto the shoulder; but, when they met the coupe, the driver thereof had angled his car toward them and ran into the left side of the truck, knocked it off into the ditch and against the embankment, and caused the front axle to fall down onto the pavement on the north side of the highway, and that the impact caused the coupe to rebound to the south side of the highway in a demolished condition.

Harry Grogen, who lived on the hill about three hundred yards from where the collision occurred, heard the crash and was the first one to arrive on the scene of the wreck. He testified that the Sneed boy's car was lying or sitting about three feet from the edge of the blacktop on the south side of the highway and that the truck was over on the north side off the blacktop; that the left front wheel was off the truck, the axle was broken, and the left front axle was dragging; that there were marks or holes on the blacktop where the left front axle of the truck cut it up; that the first marks or holes were two or three feet over the center of the blacktop on the south side of the highway and then angled off until the truck had gotten off the blacktop on the north side of the highway; that the coupe was demolished until it looked like a pile of corn stalks, and the damage appeared to be on the left side of the coupe; that he saw no place on the side of the truck showing that the coupe had hit it.

The marks or cuts in the blacktop were observed by other witnesses as much as a year after the collision.

Essie Sneed, the mother of deceased, testified that her son was her only child and that she was his only heir; that he was twenty-three years old when killed and had lived with her continuously on the farm all of his life; that he did all the work on the farm with the assistance of hired help a part of the time; that he did all the chores and the cooking when she was unable to get about; that her hip had been broken early in life and that she was a cripple and was seriously afflicted with rheumatism; that at times she could not put on her shoes and that her son did this for her.

Over appellant's objection and exception, Essie Sneed was permitted to testify that her son had stated to her he never intended to marry and that there were no evidences that he intended to do so or that there was any prospect of him doing so; that he seldom went with girls; that she did not learn from him that he contemplated marrying and moving away and ceasing to help her; that he never said anything that indicated that he would leave

her; that she could not drive a car and that he took her every place that she wanted to go.

Essie Sneed had an expectancy of fifteen years and her son an expectancy far beyond hers. He was healthy and able to care for his afflicted mother the rest of her life.

Appellants contend for a reversal of the judgment on four grounds:

First, that there is no substantial evidence to show that the marks or holes in the blacktop on the south side of the highway were made by the dragging axle of the truck.

Second, in admitting that part of Essie Sneed's testimony to the effect that her son told her that he would not marry as long as she lived, that he never said or did anything indicating that he contemplated getting married or leaving her, that he never went with girls much, and that he never said he was going to leave her.

Third, that the court erred in giving instruction No. 1, requested by appellee; and

Fourth, that the verdict is excessive.

■ Appellant argues that the truck did not cross over from the north side of the highway to the south side thereof and run into the car of deceased, and that there was no substantial evidence to show that it did. We think the physical facts warranted the jury in finding that the truck ran into the coupe on the south side of the highway. The left front wheel of the truck was off after the collision, and the axle was dragging on the blacktop and making marks and holes therein in a northwesterly direction until it went into the ditch and embankment. These marks and holes began about three feet south of the center line of the blacktop. It is substantial evidence tending to show that the truck had crossed over to the wrong side of the road and struck the coupe. Had it been otherwise, the marks and holes in the blacktop on the south side of the center line would not have been like those on the north side of the center line made by the dragging axle of the truck. The similarity of the marks and holes on both sides of the center line circling in the same direction up to and where the truck stopped is sub-

stantial evidence tending to show that the axle of the truck dropped down and began to drag on the south of the center of the blacktop and warranted the jury in concluding that the truck was over on the south side when the collision occurred. The point of collision was the acute issue to be determined in order to determine whether the truck driver or whether the deceased was to blame.

■. The contention of appellant that the court was in error in allowing Mrs. Sneed to testify that her son told her he was not going to marry, but was going to live with her until she died is not correct. Appellant argues that it is hearsay. Of course, it was hearsay, but the burden was on appellee to show the mother was dependent on her son and would suffer pecuniary loss on account of his death, and his declarations were the best evidence and only available evidence to show his intention as to whether he intended to serve his mother in future years. This rule of evidence is stated as follows in Sutherland Damages by Berryman, Vol. 5, Fourth Edition, p. 4921: "The loss of personal services rendered by a son to a parent who lives with him as a member of his family are to be compensated for. A statement made by deceased to his mother that he would support and take care of her during life is competent evidence to show her reasonable expectation of pecuniary aid from him."

Berryman cites two Arkansas cases in support of the rule, to-wit: *Memphis, etc., Railroad Company* v. *Buckley*, 99 Ark. 422, 138 S. W. 965; *St. Louis, etc., Railroad Company* v. *Jacks*, 105 Ark. 347, 151 S. W. 706. Any circumstances tending to show he had no intention of leaving his mother were admissible for the reasons stated above.

■. Appellants contend that instruction No. 1, given at appellee's request, was error is not sound. The instruction, in part, is as follows: "If you believe from a preponderance of the testimony that the deceased, Clarence Sneed, was killed because of the reckless, careless or negligent operation of the truck of the defendant, J. R. Crawford, by his agents, servants or employees,

Lee Ragsdale, as alleged in the plaintiff's complaint, * * * ,"

Appellants argue that this instruction assumes that the truck driver negligently struck the coupe and that he, in effect, so told the jury. That part of the instruction complained of is quoted above, and we see no such assumption in the language used, or that in using the language, the court told the jury that the driver of the truck was negligent. The construction placed upon the language used by appellants is not reasonable and logical.

■ The verdict for the value of the coupe was $150, and the proof tended to show that it was worth more than that amount. The verdict for $5,000 for the benefit of the mother of the deceased, in our opinion, was not excessive. She was a cripple and afflicted badly with rheumatism and unable at times to do her house work and at other times unable to put on her shoes. Her son, for many years, had cultivated her farm, had performed all the chores and even did much of the cooking and house work. His declarations, as well as his conduct in caring for his mother in the past, indicated very clearly that he intended to continue such services as long as his mother lived. She suffered, necessarily, a great pecuniary loss when he was killed. We think the verdict for $5,000 for the loss of these services is very moderate for and during her expectancy of fifteen years.

The judgment is affirmed.

McHaney, J., dissents as to amount of judgment.