## JOHN HANCOCK MUT. LIFE INS. CO. v. MENSON et al.
### Civ. No. 535.

United States District Court
W. D. Arkansas, El Dorado Division.
May 8, 1951.

---

Crumpler & O'Connor, El Dorado, Ark., for plaintiff.

G. E. Snuggs, E Dorado, Ark., for defendant claimant Cora R. Menson.

Mahony & Yocum, El Dorado, Ark., for defendant claimant Dorothearyn Menson Jones.

JOHN E. MILLER, District Judge.

This suit is an interpleader action brought by the plaintiff against the defendants, who are claimants to the proceeds of a certain policy of insurance issued by plaintiff and upon which plaintiff admits liability. Plaintiff has deposited the face amount of the policy in the registry of the court, and the court is called upon to determine which of the two claimants is entitled to the same.

Both defendants have filed responsive pleadings, from which it appears that Cora R. Menson is claiming as the wife of the insured and Dorothearyn Menson Jones is claiming as the daughter of the insured. The answer, and amendment thereof, of the latter alleges that the correct name of the daughter is Dorothearyn Menson Jones rather than Dorothy R. Menson James, as

alleged in the complaint. The various pleadings filed by Cora R. Menson challenged the jurisdiction of the court and prayed for the allowance of the statutory 12% penalty and an attorney's fee, but the attorney for Cora R. Menson withdrew said allegations at the trial of the case.

The case came on for trial to the court on April 26, 1951, and at the conclusion of the presentation of evidence, the court announced that it would take the case under advisement pending receipt of citations of authorities from the respective attorneys. The court has considered the pleadings, evidence adduced, exhibits thereto, and the authorities cited by the attorneys, and now makes and files herein its findings of fact and conclusions of law, separately stated.

## Findings of Fact

### 1

Plaintiff is a Mutual Life Insurance Company, organized under the laws of the State of Massachusetts. Defendant Cora R. Menson was at the time this action was commenced and is now a citizen and resident of El Dorado, Union County, Arkansas. Defendant Dorothearyn Menson Jones was at the time this action was commenced and is now a citizen and resident of Toledo, Lucas County, Ohio. The amount involved herein exceeds the sum of $500.00, exclusive of interest and costs.

### 2

Lovel Menson, hereafter referred to as the insured, was a colored man and during his lifetime resided in El Dorado, Arkansas. He had one child, the defendant, Dorothearyn Menson Jones, born in 1921. His then wife and the mother of Dorothearyn died approximately a year and a half after the birth of Dorothearyn, and he did not remarry until 1944, when he married the defendant, Cora R. Menson. After the death of his first wife, Dorothearyn went to live in the home of her uncle and aunt, Eli and Rosa Modica, in which home her grandmother also resided at the time.

The insured made contributions in an undetermined amount to his daughter un-

til 1935 or 1936. At that time he took up residence as a boarder in the home of the defendant, Cora R. Menson, which had been acquired by the latter from a former husband. This arrangement continued until 1944 when the insured and said defendant were married, and thereafter, they continued to live together as man and wife in the latter's home until the death of the insured November 19, 1950. The insured was illiterate, being unable to either read or write. He worked as a laborer at various jobs until sometime in 1947 when he went to work for the El Dorado Water Company, a subsidiary of General Water Works Corporation. On October 16, 1948, he applied for coverage under a group life insurance policy available to the employees of said corporation. The application for said insurance reads, inter alia, as follows:

| "Name of Beneficiary | Menson Last | Dorothy First | Ream Middle | Relationship | Wife" |
|---|---|---|---|---|---|

The policy was issued to said insured effective January 15, 1949, for the face amount of $1,000.00, and the beneficiary named in the policy is "Dorothy R Menson—Wife".

In March, 1949, the insured, while engaged in the performance of his duties with the water company either suffered an injury or a stroke, the exact nature of which was not developed and is not important for present purposes, and was either completely or partially disabled from that date until the date of his death November 19, 1950.

At the time of insured's death plaintiff admits that the policy of insurance was in full force and effect and that all conditions precedent to liability on the policy have been duly satisfied.

**3**

As stated above, the insured resided at the home of Cora R. Menson whose name prior to her marriage was Cora Rogers. Her maiden name was Cora Leslie. The exact nature of their relationship prior to their marriage was not fully developed, but Cora testified that the insured was a boarder. Cora had no children from her marriage to Ellis Rogers, and she and the insured had no children as the result of their marriage.

Certain testimony was introduced in her behalf to the effect that her middle name was "Ruth", but it does not appear that the insured ever referred to her as "Ruth", or that he had knowledge of such middle name. The same is true of their associates, who knew her merely as Cora.

It appears that the insured earned a living for the two until his disability in March, 1949, after which Cora worked and was the main source of income and support.

Cora testified that the insured brought the policy home and gave it to her and that either at the time or later she noticed that it was not made out in her name and questioned the insured about this, but nothing was ever done by either to have the beneficiary correctly and definitely named. The policy has remained in Cora's possession until the present time.

After the death of the insured, the defendant, Cora R. Menson, filed suit in the Chancery Court of Union County to have the policy reformed so as to show Cora R. Menson—Wife, beneficiary, rather than Dorothy R. Menson—Wife, the present designation. The present proceedings were instituted thereafter and resulted in a stay of that suit.

**4**

As above stated, the defendant, Dorothearyn Menson Jones, was born to the insured and his then wife in 1921, and after the first year and a half of her life was raised by her uncle and aunt. She married Rufus Henry in 1940 and left El Dorado. Until that time she saw her father intermittently, and at all times was on friendly terms with him.

Sometime prior to 1944 she divorced Henry and in that year, while residing in Little Rock, married her present husband, Fred Jones. Prior to that marriage she sent for her uncle and her father, and at

her request they came to Little Rock "to approve" her prospective husband. After her marriage to Jones she moved to various places in other States and finally settled in Toledo, Ohio, where she now resides. She is a practical nurse, and obviously is much better educated than any other witness that appeared in the case. She has acquired either through her high school education or her contacts since her first marriage a much broader experience than other witnesses and appeared to be a person of considerable understanding of the problems of life.

After being advised of her father's injury or illness in March, 1949, she returned to El Dorado and spent some three weeks with him, during which time she nursed him, procured and paid for prescriptions, and paid for some doctor bills. She talked to her father about accompanying her to her home in Ohio and according to her testimony secured an agreement from him to do so. Her husband was also ill about this time, and after her father showed a definite improvement she returned to her home. She did not see her father again until shortly before his death November 19, 1950, when she returned to El Dorado. According to her testimony she was not notified of his serious condition until it was too late for her to arrive prior to his lapse into an unconscious condition, in which condition she found him on her arrival.

After the first injury or illness of the insured his health improved to an extent that he could move about and on at least one occasion he went squirrel hunting. However, he was never able to perform physical labor after his first injury or illness and died as the result of a stroke of paralysis.

There was always a considerable amount of animosity between Dorothearyn and Cora. It is apparent that each resented the other, and the resentment was openly maintained.

5

All witnesses who had known the defendant, Dorothearyn Menson Jones, pronounced her name "Dorothy-Rean", and it might well be inferred from the name on the application, "Dorothy Ream", from which the policy designation, "Dorothy R.", was taken, that this was an attempt by the person taking the application to spell out the insured's pronunciation of Dorothearyn.

Such an inference would result in the following status of the beneficiary designation in the application and policy: The first name of the beneficiary that of insured's daughter; the last name of the beneficiary that of his daughter's maiden name, Menson, but not her married name, Jones; the last name that of his wife's married name; and the relationship of the beneficiary listed as wife.

6

The following testimony pertaining to statements of the insured prior to his death introduced on behalf of the defendant, Cora R. Menson, was objected to by the defendant, Dorothearyn Menson Jones, but was admitted by the court subject to further examination and if found inadmissible to be excluded from consideration in finding the facts:

Ollie Boradnax, a neighbor and friend, testified that the insured told her that he had a policy of insurance with the water company and wanted Cora to have it.

Cora Armstrong, a friend, testified that the insured told her that the Water Company insurance was made out to his wife.

Horace Huey, an employee of a store where the insured traded, testified that the insured told him, in the course of a conversation wherein the witness advised him to get his Masonic Lodge affairs straightened out, that Cora would get some insurance when he died to aid her in paying bills.

Grady Jones, logging contractor and long time acquaintance, testified that in the course of a discussion of the merits of group insurance, the insured told him that he had fixed it so Cora would not suffer, and that he had some group insurance and had left it to Cora.

Mary Garner, a neighbor, testified that she heard the insured say at the home of Ollie Boradnax that Cora was his beneficiary of the Water Company Policy.

The defendant, Cora R. Menson, testified that the insured told her, when she questioned him about the policy, that she was his wife and it was payable to her and that he did not know how the mistake was made but he wanted her to have the insurance.

James L. Caldwell, of the El Dorado Water Company, took the application on the policy involved and testified that in answer to his question the insured told him he wanted the policy made to his wife. On cross-examination this witness testified that when he asked for the name of the beneficiary, the insured told him "Dorothy Ream"; that he wrote it down as he understood the insured's pronunciation; that he checked the spelling with the insured, and the latter consented to the spelling used; that he did not understand the insured to say Cora R. or Cora Ruth, but that he wrote it down as he understood it; and that the insured made his mark, and the witness signed his name for him.

### 7

The defendant, Dorothearyn Menson Jones, conditionally offered the following testimony pertaining to statements of the insured prior to his death, that is, upon the condition that it be considered only in the event the court determined that such testimony was admissible:

The defendant, Dorothearyn Menson Jones, testified that the insured told her that he had some insurance with the Water Company and that she was the beneficiary; that it was the same in this policy as it had been in the Lion Oil Policy, which had been made to her; and that he did this because she was his only child and he had never been able to do much for her.

No proof other than the above was offered as to the identity of the beneficiary in the Lion Oil Policy, but that policy was dropped or lapsed when the insured ceased to be an employee of Lion Oil, which apparently occurred in 1940.

T. L. Meek, a fellow employee with the Water Company, testified that he and the insured had discussed their company insurance; that the witness had mentioned that he had his made to his sons; that the

insured had stated that his was made to his daughter; and that the day following the discussion the insured brought a picture of his daughter to work and showed it to witness.

Eli Modica, uncle of the daughter, testified that the insured told him one day on the courthouse lawn at the bus stop that he (insured) had his water company policy made "to my kid" just like the one he had had with Lion; that the insured usually referred to his daughter as "kid"; and that on another occasion the insured told him that he had to see about getting the policy revived, at which time, he again stated that it was made to "my kid".

Rosa Modica, aunt of the daughter, testified that the insured always told her that he wanted his girl to have her part.

Mary Wilson, sister of the insured, testified that she nursed him during his illness, and that he had talked to her about insurance and told her that he had it made out to Dorothearyn.

Julia Ann Menson, sister of the insured, testified that she asked the insured before and after he got sick about his insurance, and he told her that it was made to Dorothearyn.

### 8

When the application and the designation in the policy of the beneficiary are considered together there is doubt as to whether the insured intended and desired that the policy should be for the benefit of his wife or of his daughter. Since the question cannot be resolved with any degree of certainty without considering the testimony of witnesses as to the statements made by the insured, the court has considered evidence of statements made by the insured along with all the circumstances existing at the time of the application and continuing until the death of the insured, including the relationship of the insured to his wife and to his daughter, the association and mutual obligation of the parties, the dependency of the wife and the daughter and the obligation that the insured would have under the then existing circumstances and what might reasonably be expected of the insured under those circumstances.

Aside from the parties there were 5 witnesses who testified that the insured stated to them at various times that he desired his wife to have the insurance. There were 4 witnesses who testified that the insured stated to them that he wanted the daughter to have the insurance. Some of the witnesses were related to the daughter. The testimony of some of the witnesses that testified for the wife, as well as some of the witnesses that testified for the daughter, was not impressive, but the testimony of Grady Jones, a logging contractor, did impress the court. This witness seemed to be entirely unbiased, and he impressed the court as being entirely disinterested.

■ Therefore, from all of the facts and circumstances, the court believes and finds that it was the intention and purpose of the insured that the policy of insurance involved be for the benefit of his wife, the claimant Cora R. Menson.

### 9

At the conclusion of the trial the court asked the attorneys for the respective claimants and the attorney for the plaintiff about the amount of attorney's fee that should be allowed to the attorney for the plaintiff, and after some discussion in open court it was agreed that $100.00 should be assessed as an attorney's fee in favor of the plaintiff.

### Discussion

■■ In the instant case the designation of beneficiary in the policy is ambiguous, and it is necessary for the court to look to facts and circumstances outside the policy in order to give effect to the intention and desire of the insured. During the trial testimony of various statements of the insured made prior to his death was admitted, under proper objection, subject to further examination by the court. The court has concluded that this testimony is admissible, and feels that it should give its reasons therefor.

■■ When the question of intention of an insured is an issue in a case, statements made by the insured concerning his intention are obviously both material and relevant, and normally furnish the best guide to a determination of his intent. The situation is somewhat clouded in this case because of conflicting statements, but, while this detracts from the weight to be given such statements, they should be considered with all of the other facts and circumstances for whatever they are worth in resolving the issue before the court.

■ In Foster v. Winingham et al., 10 Cir., 169 F.2d 46, 47, which involved a dispute between the insured's wife and daughter, the lower court admitted in evidence and gave consideration to a letter of the insured written to his daughter prior to his death stating, "I took out 5000 of insurance for you. I will mail you your papers when I receive them", and this was challenged as error in the Court of Appeals. Concerning this matter, the court said, 169 F.2d at page 48: "But the admissibility of the letter in evidence is challenged. The argument is that it was hearsay, a mere conclusion, a self-serving declaration, and not binding on the wife. Ordinarily writings or unsworn declarations which are no part of the res gestae are not admissible in evidence. But where the existence of a particular intent of a person at a certain time and in connection with a certain incident or transaction becomes a distinct and material fact to be proved in a chain of circumstances, words spoken or written by such person which have a bearing upon that intent are admissible."

The rule in Arkansas seems to be the same. In Crawford v. Center, 193 Ark. 287, 291, 100 S.W.2d 83, 85, the court said: "The contention of appellant that the court was in error in allowing Mrs. Sneed to testify that her son told her he was not going to marry but was going to live with her until she died is not correct. Appellant argues that it is hearsay. Of course, it was hearsay, but the burden was on appellee to show the mother was dependent on her son and would suffer pecuniary loss on account of his death, and his declarations were the best evidence and only available evidence to show his intention as to whether he intended to serve his mother in future years."

Under the provisions of Rule 43, Federal Rules of Civil Procedure, 28 U.S.C.A.,

**326**

the court may accept either of the above decisions as authority for the reception of this testimony.

■ The court feels that the facts present but one basic issue. Was it the intention of the insured to leave this insurance to his wife or daughter? In resolving this issue the court must base its conclusion upon the facts as it finds them, and need not concern itself with the burden of proof in reformation cases or with the rule announced in some cases that the name of the beneficiary controls when the relationship designated does not correspond to the name. As regards the latter "rule", it would be of no particular benefit if applicable, because the policy designation is not the correct name of either claimant, but on its face would appear to be a combination of the two. As stated above, these things are proper for the court's consideration, but they only constitute circumstances which the court must view along with all other circumstances and facts.

The facts developed in this case make the task of the court extremely difficult. Certain inconsistencies in the actions and statements of the insured might be explained by the fact that he was illiterate, but it is impossible to reconcile the inconsistent statements of the insured concerning the beneficiary of the policy. Unless all of the witnesses on one side or the other are lying, which the court finds it difficult to believe, it appears that the insured gave various people different versions about what he had done with the insurance. However, the court must make a determination of the matter, and it has done so in accordance with the evidence which, in the exercise of its best judgment, it believes most nearly represents the true intention of the insured.

### Conclusions of Law

**1**

The court has jurisdiction of the parties and of the subject matter of this cause.

**2**

It was the intention and purpose of the insured, Lovel Menson, at the time of the application and issuance of the policy, that the insurance involved herein be for the benefit of his wife, Cora R. Menson, and, therefore, the claimant, Cora R. Menson, is entitled to the net proceeds of the policy which are now in the registry of the court.

**3**

The plaintiff, John Hancock Mutual Life Insurance Company, should be discharged from all further liability on account of the insurance policy involved herein, and the plaintiff is entitled to the sum of $100.00 out of the proceeds of the said policy as an attorney's fee, together with its costs.

All other taxable costs should be adjudged against claimant, Cora R. Menson, and retained by the Clerk from the proceeds of the policy herein declared due her.

**4**

Judgment in accordance with the above should be entered.